85 P.2d 595

**MANN v. BOARD OF EDUCATION OF THE CITY OF ARTESIA et al.**

**No. 4455.**

Supreme Court of New Mexico.

Dec. 14, 1938.

Rehearing Waived Dec. 19, 1938.

Neil B. Watson, of Artesia, for appellant.

Stagner & Reese, of Carlsbad, for appellees.

SADLER, Justice.

In the case before us we are to decide whether proposed school bonds about to be issued and sold to the federal government by authority of Laws 1934 (Spec.Sess.), c. 6, under a Public Works Administration (commonly known as P. W. A.) application, are illegal and void because the election at which they were voted was held within a year succeeding consecutively that of a previous bond election in the same school district in contravention of 1929 Comp. § 120-702 of the School Code.

Section 120-702 of the school code prescribes the form of the petition for initiating a school bond election and further provides: "Two separate questions may be submitted in the petition for election and in the election, in which case the vote thereon shall be separately counted, canvassed and certified, but not more than one such election hereunder shall be held in any two consecutive years."

In April, 1937, Artesia Municipal School District No. 16 of Eddy County voted a bond issue of $85,000, the proceeds to be used in erecting and furnishing a high school building. The bonds were sold to the State of New Mexico and most of them are still outstanding as subsisting obligations of the district. This election was initiated and conducted by authority of Article 7, Chapter 120, New Mexico Statutes Annotated, 1929, a part of the School Code.

In September, 1938, at another election initiated under the authority of Laws 1934 (Spec.Sess.) c. 6, bonds of the district to the amount of $42,000 were voted for the purpose of providing additional buildings and improvements for school purposes. The validity of the second election is challenged by plaintiff as a taxpayer and resident of the district in a suit for injunction against the Board of Education of the district to restrain the issuance and sale of the bonds to the United States of America acting through its agency, the Federal Emergency Administration of Public Works. The sole ground of attack upon the validity of the bond issue is that the election purporting to authorize the bonds is void because held within the second consecutive year following the previous bond election noted hereinabove.

The cause was tried upon the complaint and answer. The trial court found that all of the proceedings in connection with the election were regular and valid; that defendants had accepted an offer from P. W. A. for a grant of $33,545 and for the purchase of the district bonds to the amount of $42,000 and that the sale of said bonds was about to be consummated. In addition, the court found that until the filing of this suit, no action or suit of any kind had been instituted in the district court of Eddy County attacking the validity of the resolution calling the election or attacking the proceedings subsequent to the election.

The trial court deduced conclusions of law from the facts found as follows:

"1. That Section 120-702 of the New Mexico Statutes Annotated, 1929 Compilation, does not prohibit the holding of more than one election in any two consecutive

years by a School District where such election is held in connection with an application to the Federal Emergency Administration of Public Works for a loan and grant in accordance with the provisions of Chapter 6 of the Special Session Laws of 1934 of New Mexico.

"2. That no attack having been made by any person or Corporation upon the validity of the Resolution calling the election of September 14th, 1938, and no attack having been made, and no person or Corporation having instituted in the District Court of Eddy County, New Mexico, an action or suit to contest the validity of the proceedings taken subsequent to the election of September 14, 1938, as provided by Sections 120-711 and 120-712 of the New Mexico Statutes Annotated, 1929 Compilation, the plaintiff is now barred by the provisions of said sections from maintaining this action."

A decree declining to enjoin naturally followed for the review of which this appeal is prosecuted.

█ We think the trial court was right in its first conclusion. Hence, we find it unnecessary to express an opinion upon its second conclusion. The obvious purpose of Laws 1934 (Spec.Sess.) c. 6 was to enable counties, cities, towns, school districts and other political subdivisions of the state therein described to avail themselves of the federal government's lending program in aid of industrial and economic recovery.

The act is known as "The Public Works Act." Laws 1934 (Spec.Sess.) c. 6, § 18. Its title reads: "An Act concerning the borrowing of money and the acceptance of grants from the federal government, simplifying the procedure for the authorization and financing of public works projects, providing for the private sale of bonds and other obligations to the federal government, providing for the form and maturity of such bonds and other obligations, generally regulating the issuance of such bonds to the federal government, conferring powers to contract therewith, and prescribing the manner of exercising existing powers in order to enable municipalities and public bodies to secure the benefits of and aid in carrying out the provisions of the National Industrial Recovery Act; and declaring an emergency."

Section 2 of the act provides: "Sec. 2. That notwithstanding the provisions of any general, special or local law, any municipality, by majority vote of its governing board, and any public body of this state, having the power under existing law to borrow money are hereby authorized to accept from the Federal Government direct grants of moneys to defray part of the cost of the labor and materials employed upon any public works project undertaken under the provisions of the National Industrial Recovery Act. That the funds received as such grants shall be expended on the project so undertaken in the same manner as other funds available for such project whether as loans or otherwise."

Section 3 authorizes private sale to the federal government by any municipality of bonds for the financing of any public works

project "notwithstanding the provisions of any general, special or local law." Section 4 authorizes any municipality to enter into agreements with the federal government and to do any and all things necessary or advisable in connection with any public works project; also provides that making or execution of such agreements may be authorized by resolution of the governing board and that the resolution need not be published. Section 5 provides for issuance and sale to the federal government of notes, temporary bonds, interim certificates and for later funding same into bonds. Section 6 (amended Laws 1935, c. 52) confers powers on municipalities with reference to the form of bonds.

Sections 7 and 8 read:

"Sec. 7. That nothing in this Act contained shall affect the provisions of any other law in so far as such law limits amount of indebtedness or requires the approval or the concurrence of any officer of a municipality in the authorization or the financing of a public works project, or the action of any commission, board or body required by any other law as a condition precedent to the appropriation of money or the approval of any commission, board or department of the State required by any other law.

"Sec. 8. That notwithstanding the provisions of any general, special or local law, it shall not be necessary for any governing board to submit to the people any public works project, nor shall such public works projects be subject to vote at any election

unless and to the extent submission or such election is required by the Constitution of the State of New Mexico."

Section 9 provides that where the matter of issuance of bonds is submitted to a vote at an election, the governing board may provide for such vote on "notice published at least once in a newspaper circulating in the municipality, and posted in at least ten conspicuous places on any day at least seven days prior to such election; and no other notice shall be required." Section 10 says that notwithstanding the provisions of any other general, special or local law, "but subject to the provisions of the Constitution of the State of New Mexico and of this Act," public works projects, or any such contract or agreement as referred to in section 4 of the act or the issuance of bonds pursuant to any such agreement "may be authorized by resolution which may be finally adopted on the same day on which it is introduced by a majority of all the members of the governing board; and such resolution need not be published before becoming effective."

Section 11 provides for awarding contracts for public works projects upon five days notice (excluding Sundays) "after at least one publication of a notice requesting bids upon such contract in a newspaper circulating in such municipality." Section 12 provides for including certain specified items such as engineering and inspection costs, legal expenses, etc., as "the cost of such public works project." Section 13 authorizes the governing board to fix maturi-

ties of bonds issued to the federal government at not exceeding fifty years.

Sections 15 and 16 provide:

"Sec. 15. That notwithstanding the provisions of any general, special or local law, any proceedings heretofore taken under any other law by any municipality relating to the subject matters of this Act, may be continued under such other law or under this Act, or, at the option of the governing body, may be discontinued and new proceedings instituted.

"Sec. 16. That this Act is intended to aid in relieving the public emergency hereafter described by simplifying the procedure for the authorization and financing of public works projects. It is the purpose of this Act to enable municipalities to secure the benefits of the National Industrial Recovery Act, to encourage public works, to reduce unemployment and thereby to assist in the national recovery and promote the public welfare, and to these ends municipalities shall have power to do all things necessary or convenient to carry out said purpose in addition to the express powers conferred in this Act; that this Act is remedial in nature and the powers hereby granted shall be liberally construed."

Section 17 is a saving clause against declared invalidity of portions of the act. Section 19 provides "that in so far as the provisions of this Act are inconsistent with the provisions of any other law, the provisions of this Act shall be controlling." Section 20 is the emergency clause putting the measure into effect immediately upon its passage and approval.

Plaintiff's position briefly summarized is this: The Public Works Act (Laws 1934, Spec. Sess., c. 6) does not itself authorize the issuance of school bonds. Such authority may be found only in Article 7, Chapter 120, New Mexico Statutes Annotated, 1929. Apparently, the only section of the Public Works Act touching upon the machinery for an election is section 9 providing that where an election is to be held, "such governing board may provide for such vote on notice published at least once in a newspaper circulating in the municipality, and posted in at least ten conspicuous places on any day at least seven days prior to such election; and no other notice shall be required."

Hence, says the plaintiff, Article 7 of Chapter 120, N.M.S.A.1929, must be resorted to for appropriate machinery for conducting and canvassing a school bond election. If availed of for this purpose, the provision of said article (§ 120-702) denying a school district the right to hold more than one election in two consecutive years also applies and invalidates this election. Quoting from plaintiff's brief:

"If we are to construe Chapter 6 of the Laws of 1934, [Sp.Sess.] in connection with Article 7 of Chapter 120 of the 1929 Code, then it would seem that said Article 7 will furnish the authority and procedure for the School District to incur an indebtedness and issue bonds for the erection of school buildings, subject only to such changes as has

been made by the Laws of 1934. These changes seem to be:

"1st. The necessity of a petition is dispensed with.

"2nd. The authority calling the election is different.

"3rd. Publication of the Resolution calling the election is dispensed with.

"4th. The notice of election is required to be published at least seven days prior to the election, instead of five days and is required to be posted in at least ten conspicuous places in the school district, instead of in five places.

"If the provisions of said Article 7 of Chapter 120 of the 1929 Code remain in effect, subject to the above mentioned changes then it would necessarily follow that the provision limiting the number of elections would remain in effect and the defendants proceeded without authority of law in calling and conducting the election of September 14th, 1938."

The argument is not persuasive. It is true as plaintiff points out and does not question that, except as specifically relieved against in the Public Works Act, the machinery of the school code for conducting such election was appropriated by assimilation in the conduct of this election. But this is not convincing that the legislature intended survival as against this act of another provision of Article 7 seeming so to limit the activities of certain school districts under the 1934 act as to deny them the benefits or advantages thereof and as to be destructive of the broad purpose of the act.

■ Considering the tenor of the whole Public Works Act and particularly the language of sections 4, 8, 15, 16 and 19 thereof, we are unable to escape the conclusion reached by the trial court. Section 4 says that notwithstanding any general laws (§ 120-702 is a general law) any municipality (and § 1 defines a school district as a municipality) may contract with the federal government for a loan in connection with a public works project. The general law (§ 120-702) operating upon the district purported to deny it the right so to contract at the time it did. The emergency law known as the Public Works Act lifts that restriction in so far as it applies to dealings for loans and grants from the federal government for Public Works Projects. If, as provided by section 8, the legislature can waive the necessity for submitting to the people any public works project, except where required by the Constitution, it would seem to follow as night the day that it possesses like power to waive for purposes of the act a statute purporting to deny for the time being the right to submit a bond issue to a vote of the people.

■ The Public Works Act is essentially an enabling Act. "It is the purpose of this Act to enable municipalities to secure the benefits of the National Industrial Recovery Act," says the legislature in section 16, "and to these ends municipalities shall have power to do all things necessary or convenient to carry out said purpose in addi-

tion to the *express* powers conferred in this Act." (Italics supplied.) One thing absolutely "necessary" to enable this school district to enjoy benefits under the act was the power to submit the issue to a vote of the people. The power to hold such an election in view of the fact that it would be the second within two consecutive years is not specifically conferred. But the legislature has said that shall make no difference if the holding of such an election is "necessary" in order to carry out the purpose of the act.

And finally in section 19 it is said that in so far as the provisions of this act are inconsistent with the provisions of any other law, the provisions of the Public Works Act shall be controlling. It not only is inconsistent but obnoxious to the whole spirit of the Public Works Act to say that a school district by reason of having held a bond election within the period restricted by the general law may not avail itself of the benefits of the act for the construction of needed improvements. Whatever the purpose to be served by this limitation found in § 120-702, the legislature of 1934 saw fit to waive it for purposes of the Public Works Act, a waiver carefully preserved by Laws 1935, c. 51, § 8.

■■ Inapplicability to defendant school district of the Public Works Act is suggested, although scarcely argued, because not possessed of the power to borrow money. Section 2 of Laws 1934 (Spec. Sess.) c. 6, purports to confine benefits of the act to municipalities "having the power under existing law to borrow money." It is said this school district finds itself without such power by reason of the bond election held the year previous to the one now challenged. That the word "power" is here used in the broad sense of distinguishing municipalities or public bodies possessed of the power to borrow from those wholly lacking such power seems obvious. The very purpose of the Public Works Act was to relieve against and suspend for purposes of the act certain restrictions in the general law which would unduly delay or prevent a present exercise of such power. Indeed under section 201(d) of Title 2 of the National Industrial Recovery Act, 48 Stats. at Large, 200, 201, 40 U.S.C.A. § 401(d), loans and grants under the act might cease through presidential proclamation or congressional joint resolution before school districts which had held an election within one year of the enactment would be in a position to apply for a loan if this limitation were applicable.

■ The Public Works Act does not purport to confer power upon school districts to borrow money. We must look elsewhere for such power. We find it in 1929 Comp. § 120-701 (Laws 1927, c. 139, § 6, amending Laws 1925, c. 73, § 11; Laws 1923, c. 148, § 701). But the enactment of this section of the School Code in 1923 created no new right in school districts as respects the mere power to borrow money. That power they had possessed for almost half a century. (See Laws 1891, c. 25, §§ 28–34; Laws 1905, c. 81; Laws 1912, c.

13. See Code 1915, §§ 4901–4903), And that, too, without any such limitation on the frequency of its exercise as was incorporated in Laws 1923, c. 148, § 702 (1929 Comp. § 120-702). It is thus seen to be not a part of the right or power itself; but nothing more than a limitation upon the exercise of the power. The power existed long before the limitation was even thought of, survived the constitution, and continues as the same power since adoption of the School Code in 1923, subject only to the limitation then interposed that it shall not be exercised more often than once in two consecutive years. The fact that its exercise is thus circumscribed in no way supports a conclusion that the power to borrow does not exist. The most that can be said is that the power is latent until the year has passed following that in which it was exercised.

The judgment reviewed should be affirmed and it is so ordered.

HUDSPETH, C. J., and BRICE and ZINN, JJ., concur.

BICKLEY, Justice (concurring in part and dissenting in part).

I concur in the view that the provisions of Chapter 6 of the Laws of 1934, Sp.Sess., do not confer *power* upon school districts to issue negotiable bonds of the district. I am unable to find in said enactment, as do my associates, any modification, suspension or amendment of the provisions of Secs. 120-701 and 120-702, N.M.S.A.1929, which repose in and define the *power* of school districts to issue such bonds, and how such power may be vitalized and effectuated by obtaining the essential assent of the electors.

When we contemplate the provisions of said last cited sections and Sec. 11 of Art. 9 of the Constitution, which requires the approval of the qualified electors of the district before it can borrow money for the purpose of erecting and furnishing school buildings and purchasing school grounds, it seems to me that the meaning is that Sec. 120-701 confers power on school districts within constitutional limitations *whenever— as soon as—* the electors give their approval.

It is, in my opinion, necessary to a proper disposition of the case at bar to declare the meaning and effect of the provisions of Sec. 120-702, which apparently prohibit the holding of a second bond election for the same purpose within two years, as to whether such provisions are a part of the *power,* or a restriction on the exercise thereof, and whether the effect is the same in either event. The majority, because they think such prohibition, if in fact it exists, has been lifted by the provisions of the 1934 enactment cited supra, so far as the situation in the case at bar is concerned, find it unnecessary to answer these interesting questions further than they have done in their opinion. In that view I am unable to agree.